THE QUEENSBORO NATIONAL BANK OF THE CITY OF NEW YORK, Respondent, *v.* WILLIAM F. KELLY, Appellant.   (Action No. 2.)

Second Department, May 6, 1927.

Banks and banking — bank examiner refused to carry certain inactive assets and directors executed notes to make good amount of inactive assets — directors were to be repaid from said inactive assets or from profits — action to recover face of one of notes — defenses that note was made without consideration, that under agreement made by directors of plaintiff bank payments were to be made in equal proportion, and that defendant has offered to comply with agreement — note was for good consideration — agreement was illegal and is no defense.

This is an action on a promissory note executed by the defendant who, at the time, was the president of the plaintiff bank and a director and the principal stockholder thereof. The note is one of twenty-one notes for a like amount made by the twenty-one directors of the bank to make good an impairment of the bank's assets caused by inactive assets which the bank examiner informed the bank could not longer be carried as live assets. The defense that the note is without consideration cannot be sustained in view of defendant's position in the bank and his connection therewith, and also in view of the fact that as claimed by the defendant the makers of the notes would be reimbursed when the bad accounts were liquidated or when the resources of the bank or its earnings were sufficient to do so.

The further defense that there was an agreement made at the time the notes were given that they would be enforced proportionately and that defendant had offered to pay a proportion equal to that paid by the other directors on other notes does not constitute a good defense, for the alleged agreement is illegal and not binding on the bank.

APPEAL by the defendant, William F. Kelly, from an order of the Supreme Court, made at the Queens Trial Term and entered in the office of the clerk of the county of Queens on the 29th day of July, 1926, directing judgment in favor of the plaintiff after the return of a special verdict by the jury, and also from the judgment entered

in said clerk's office on the 5th day of August, 1926, pursuant to said order.

*Ignatius A. Scannell*, for the appellant.

*Charles S. Michel* [*Samuel Perlo* with him on the brief], for the respondent.

KAPPER, J.    Defendant was the principal stockholder, director and president of the plaintiff bank.    He is sued on his promissory note, made payable to the plaintiff, for the sum of $2,377.17.

His answer is, *first*, that the note was made by him without consideration, and *second*, that the note was one of twenty-one notes each for a like amount and made by the twenty-one directors of the bank including himself to make good an impairment of about $50,000 of the bank's assets; that it was agreed amongst the several directors that payments on these notes should be made by the makers " in equal proportion to the amounts of the note or notes signed by each director; " that none of the directors made any payments on account of said notes at their maturity with the exception of interest charges and ten per cent of the amount of each note, and that the ·defendant has offered to pay on account of his note " any sum in proportion to the amount paid by the other directors," but plaintiff has declined to receive any payment from him other than the amount of the note in full.

Trial by jury was had, and a single question submitted to them for answer, namely: " At and prior to April 6th, 1925, the time of the making of the original notes by the defendant and the other directors of the plaintiff bank, was an agreement for the payment of such notes as testified to by the defendant entered into between the directors and the bank? " To this question the jury answered, " Yes." The learned trial justice thereupon made an order holding " that the said agreement found by the jury as having been entered into between the plaintiff and the defendant is invalid and has no significance in law because the same is indefinite, vague and uncertain," and directed judgment in favor of the plaintiff for the amount of the note with interest, and judgment accordingly was thereupon entered. From it the defendant appeals.

There is no dispute but that, up to the time of the commencement of this action, the directors other than the defendant had paid into the bank on account of their notes ten per cent of the amount thereof, as the defendant alleged.

The so-called agreement upon which the appellant relies has for its basis only his own testimony, from which it appears that the bank was in process of examination by the Federal bank examiner who, on April 6, 1925, while the examination was about completed,

engaged in a conversation with the defendant and his codirectors; and defendant, being asked to state what was said at that time, answered: " There were certain slow and doubtful assets of the bank which the bank examiner ruled could not be carried among the assets of the bank. Some of these loans were considered collectible in the future, but for present purposes he considered they should not be classed among the live assets. Accordingly, the sum total of those accounts was some $51,000, approximately. It was suggested at that time that the directors, proportionate among themselves, take up these losses, with the idea of reimbursing themselves either from the slow and doubtful assets as they were collected or from other earnings of the bank as they might be available. The proportionate amount was $2,166. A director by the name of Jacob Rachich and myself drew our checks for that amount of money and laid them on the table. One director, by the name of James S. Hurwitz, objected that he was not in a position to liquidate any such sum of money at that time, nor he did not see in any event why he should liquidate any part of that loss, and some argument took place, and his friends, Mr. Perlo and Mr. Roth, persuaded him to sign the note for that amount for $2,166. Another director, John Russo by name, as I recall it, together with Mr. Hurwitz, objected that they would not be able to pay those notes in full as they became due; and the matter then resolved itself into an understanding with all the directors that these notes should be given proportionately * * *. The conversation among the directors was they were not able to and would not be willing to liquidate these notes as they became due, but that they would liquidate these notes gradually and proportionately. Some question was made to the bank examiner as to whether these notes — one of the directors addressed an inquiry to the bank examiner as to whether these notes must be paid in full at maturity, and he said ' no,' that as long as reasonable reduction — something like ten per cent was mentioned — I even think he suggested the amount, if my recollection serves me right — that if proportionate payment of, say, ten per cent was made when these notes gradually fell due, it would be considered proper by the Bank Department, and would be passed by him. * * * The conversation at that time among the directors was that while there was no positive liability on the part of the directors, that these losses had been occasioned in the functioning of the bank over a year and a half or more of its existence, and that rather than levy an assessment upon the stockholders, the directors would take up the losses, with the distinct understanding that they would be reimbursed either from one or two sources; that is, liquidation

of the bad accounts or from other resources of the bank or earnings as they came in."

Assuming that this testimony made out an agreement amongst the directors of this bank that the notes of each were to be obligated only to the extent of proportionate payments on account from time to time, I am of the opinion that such agreement was wholly ineffectual to defeat the bank's claim against the makers of the notes. The contention that this note was without consideration cannot prevail. The vital interest which this appellant, as principal stockholder, director and president of the bank, had in its success or continuance in business was in and of itself a sufficient consideration for the giving of his note for a one-twenty-first proportion of the total of the bank's impaired assets. It is apparent from the defendant's testimony that the ruling of the Federal bank examiner was that these " doubtful assets " or " losses " could not be carried as bank assets. Moreover, the testimony expressly shows that these directors " would take up the losses, with the distinct understanding that they would be reimbursed either from one or two sources; that is, liquidation of the bad accounts or from other resources of the bank or earnings as they came in." It was the clear intention of all of the makers that their notes were to be looked upon by the bank's depositors as well as the public as live and liquid funds, and that these notemakers were to be regarded as creditors of the bank out of specific sources, namely, when the " bad accounts " were liquidated or the resources or earnings of the bank would permit of reimbursement. The notes were not only good but were based upon a fair legal consideration.

Moreover, I think that, under well-settled authority, this arrangement of the directors, assuming it to have been made and further assuming it to be entitled to the dignity of being called an agreement, was illegal. DALY, Chief Judge of the New York Common Pleas, General Term, in *Sickels* v. *Herold* (15 Misc. 116, 118), learnedly discusses the proposition, as follows: " It thus appearing that the notes in question were delivered by the directors to the bank to make up an impairment of its assets, in order to satisfy the Superintendent of Banking and secure his sanction to continue the business of the bank and to give it credit with the public for the receiving of deposits and doing its general business, the makers of the notes are estopped, as against the receiver, who represents the creditors of the bank, from alleging want of consideration. They are also estopped from contesting their liability on the ground of the alleged agreement between them and the cashier of the bank, that the notes were not to be enforcible until the deficiency upon the rejected securities should be ascertained. *Hurd* v. *Kelly,*

78 N. Y. 588; *Best* v. *Thiel,* 79 id. 15.   In the case first cited, the defendant executed a bond to a bank whose assets were impaired, to enable it to continue business, with the request, on the part of the obligor, that it should do so, and with the knowledge of the Bank Department.   The defenses of want of consideration, that the transaction was in violation of public policy, that there was a fraudulent suppression and concealment by the bank officials of its true condition, and that the bond was delivered upon condition that others should execute it who failed to do so, were all overruled; and it was not only held that the instrument was made upon good consideration, but that the obligor was estopped from setting up those defenses, the court saying that the dealings between him and the officials of the bank ought not in justice to be allowed to affect the security given by him for the protection of those dealing with the bank and who must be presumed to have relied thereon in their dealings; and that having allowed the note to be treated as an asset, and the public to deal with the bank on this assumption until the bank had become insolvent, he was estopped from setting up the defenses.   *Hurd* v. *Kelly, supra.*   In the second case, a mortgage had been given to the bank upon requirement of the Bank Department to make up a deficiency in the assets and enable the bank to continue business; and it was held that as it was in consequence of this and other securities given by the trustees that the Superintendent of the Banking Department, acting officially for the public and all the creditors of the bank, permitted it to continue its business, and that in reliance upon this and other securities that depositors were induced to make and leave deposits in the bank, it was upon the clearest principles of justice and morality that the defendant should be estopped from attacking the validity of the mortgage.   *Best* v. *Thiel, supra.*"

That opinion was adopted on the appeal in the same case by the Court of Appeals in *Sickles* v. *Herold* (149 N. Y. 332, 335). And the New York view of the law was approved by the Supreme Court of Pennsylvania in *State Bank of Pittsburg* v. *Kirk* (216 Penn. St. 452, 455), where in a discussion of the defense of want of consideration, it was said: " This court has not heretofore been called on to pass upon the exact question now raised, but similar questions have frequently been before the courts of New York, and the rule laid down in that State is so consonant with good conscience, wise public policy, and natural justice, that we feel impelled to adopt and follow it.   In the New York cases it was held that where the directors of a bank in order to take up certain bad loans held by the bank, which impaired its capital, had executed their own notes to the bank in like amount, pursuant to an agreement

with the cashier, that the notes should not be enforceable until the deficiency upon the rejected securities should be ascertained, they could not set up want of consideration to defeat an action instituted by the receiver, subsequently appointed, to collect the notes. The same rule was held to apply when a number of trustees of a bank had executed a bond for the purpose of exhibiting it to the Banking Department as an asset when examined, in order to enable the bank to pass a satisfactory examination and continue its business; also, where the defendant, a trustee of the bank, had executed a mortgage to make good a deficiency in the assets of the bank. In all of these cases, and many more of a similar character, it was decided that the makers of the notes were estopped from setting up want of consideration." (Citing New York cases.)

It seems to me that nothing more need be added to show that the judgment directed by the learned trial court was founded on sound law and is salutary in its result.

I advise that the order directing judgment for plaintiff, and the judgment entered thereon, be affirmed, with costs.

Present — KELLY, P. J., YOUNG, KAPPER, LAZANSKY and HAGARTY, JJ.

Order directing judgment for plaintiff, and judgment entered thereon, unanimously affirmed, with costs.